BROWN & WILLIAMSON TOBACCO CORPORATION, Plaintiff,

v.

CSX TRANSPORTATION, INC., Defendant.

No. 5:94–CV–485–H1.

United States District Court, E.D. North Carolina, Western Division.

April 5, 1995.

512

Richard T. Boyette, Cranfill, Sumner & Hartzog, Raleigh, NC, for plaintiff.

Randall R. Adams, John R. Jolly, Jr., Poyner & Spruill, Rocky Mount, NC, for defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter comes before the court on the defendant's motion, filed February 15, 1995, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure alleging there is no genuine issue of material fact. The plaintiff filed its response in opposition to the motion for summary judgment on March 7, 1995. The defendant did not file a reply. This matter is ready for adjudication.

### Statement of the Facts

The above-captioned action arises as a result of a fire that occurred on August 17, 1992, at the Hail and Cotton tobacco warehouse in Rocky Mount, North Carolina. The plaintiff commenced this action "sounding in tort" on June 21, 1994. This matter was removed to this court on July 6, 1994, from the General Court of Justice, Superior Court Division, Wake County, North Carolina, as this court had diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1441.

On August 17, 1992, Mark Anthony Harper ("Harper"), a 16–year old from Rocky Mount, North Carolina, trespassed across the railroad yard owned and operated by the defendant CSX Transportation, Inc., as he had done on numerous occasions to reach his father's home from his mother's. The rail-

road yard was located between the residential neighborhoods. The defendant admits that it had knowledge that unidentified individuals, including children, crossed the railroad yard by foot. The continuous use by the unauthorized pedestrians crossing the railroad yard allegedly created a foot path. The railroad yard was not completely enclosed by a fence. The evidence shows that the defendant had not placed signs along the perimeter of the property warning people that the property was private.

On the day in question, Harper allegedly discovered an open box of railroad fusees on the railroad tracks and under a box car, of which Harper seized several. According to the Material Safety Data Sheet (MSDS), railroad fusees are essentially non-explosive products or pyrotechnic devices composed of Strontium Nitrate, Potassium perchlorate, Sulfur and a sawdust/oil binder. The railroad fusees have generally been described as "flares." The MSDS directs that the fusees be kept out of the reach of children. After obtaining the fusees, Harper continued his progress across the railroad yard.

Prior to reaching his father's home, Harper visited the home of his two teenage friends, Derrick and Nello Custalow. After the teenagers ignited a couple of the fusees, they decided to go to the local community center. Along their route to the community center, the teenagers began playing with the ignited fusees by using them to write their names along the side of tin buildings or on poles inside the buildings.

The youth crossed the private property of the Hail & Cotton Warehouse, which was located near the community center. The teenagers started a fire by igniting a stack of styrofoam insulation assembled on the warehouse's loading dock. The entire warehouse became engulfed with flames, resulting in the destruction of tobacco products owned by the plaintiff Brown & Williamson Tobacco Corpo-

ration. The plaintiffs contend that the tobacco stems, scraps, and strips that were damaged were worth in excess of $1.3 million.

The plaintiff brought this action alleging that its tobacco products were destroyed as a direct result of the defendant's negligence, gross negligence, recklessness, willfulness, and wantonness.

## Discussion

Summary judgment, authorized by Rule 56 of the Federal Rules of Civil Procedure, is to be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.[1] *Kimmell v. Seven–Up Bottling Co.,* 993 F.2d 410 (4th Cir.1993), *citing Celotex Corp.,* 477 U.S. at 317, 106 S.Ct. at 2549 (1986). The non-moving party bears the burden of coming forward with evidence to oppose summary judgment. *Id.* A non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits ..., must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

## I. Negligence

■ The plaintiff's claims for relief are primarily based upon the alleged negligence of the defendant in enabling children to have access to a dangerous instrumentality knowing that the fusees could cause harm to people and property. As this action was brought to this court on diversity grounds, the substantive laws of North Carolina are to be used. In order for a party to successfully

---

1. The defendant asserts that a material fact is in dispute between the parties. The defendant contests the plaintiff's evidence that the teenagers obtained the flares on their property. However, the defendant maintains that summary judgment may be granted in this action despite this glaring factual dispute. The defendant maintains that, even assuming that the plaintiff's entire descrip-

tion of the facts was correct, North Carolina substantive law, as applied to the plaintiff's set of facts, requires that summary judgment be awarded as a reasonable jury could not decide in another fashion. Accordingly, the court shall analyze the summary judgment motion under the assumption that the fusees were in fact obtained on the CSX property.

pursue a negligence action in North Carolina, the plaintiff must establish a prima facie negligence claim: (1) that CSX owed a duty of care to the plaintiff; (2) that CSX breached its duty of care; (3) that as a proximate result of the breach of its duty of care, the plaintiff was injured; and, (4) the plaintiff was actually damaged. *Winters v. Lee,* 115 N.C.App. 692, 693, 446 S.E.2d 123, 124 (1994); *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 160 (4th Cir.1988).

The defendant contends that the plaintiff's cause of action claiming negligence is not actionable as (1) the plaintiff is not a "foreseeable" plaintiff; (2) the defendant's action was not the proximate cause of the plaintiff's injuries; and, (3) the teenagers' criminal actions were an intervening cause to any alleged negligence of the defendant. In essence, the defendant contends that the plaintiff may not maintain its negligence claims because there was not a "reasonable foreseeability of injury." *Winters,* 115 N.C.App. at 694, 446 S.E.2d at 124. The courts consider "foreseeability" in terms of the defendant's duty of care and proximate cause. *Id.*

## A. Duty of Care

■ An individual has a general duty of care under the law to act in the manner any ordinary, prudent and reasonable person would do under similar circumstances. *Hart v. Ivey,* 332 N.C. 299, 305, 420 S.E.2d 174, 177 (1992); *Council v. Dickerson's Inc.,* 233 N.C. 472, 64 S.E.2d 551 (1951). The duty of care is only owed to foreseeable plaintiffs who the defendant reasonably believed would be harmed by its action. *See Palsgraf v. Long Island Railroad,* 248 N.Y. 339, 162 N.E. 99 (1928); *see also Elk Refining Co. v. Majher,* 227 F.2d 816 (1955).

■ There is evidence that CSX required that all fusees be stored in a particular location so that they would not be acquired by unauthorized individuals. CSX employees maintained that the fusees are dangerous, both to people and property. Prior to August 17, 1992, the defendant possessed approximately 69 criminal activity reports detailing vandalism and other unlawful occurrences on or about the yard by juveniles from the area. These illegal actions tran-

spired in the short span between January 1987 and July 1992.

Having an understanding of these matters, a reasonable and prudent individual could foresee that the abandoned fusees could be used to harm a second party. Thus, the court finds, that as to this motion for summary judgment, the plaintiff is a foreseeable plaintiff.

## B. Proximate Cause

An essential element that the plaintiff must establish for a negligence action is proximate cause. The North Carolina courts have defined proximate cause as

a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Bolkhir v. North Carolina State University,* 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988) *quoting Hairston v. Alexander Tank & Equipment Co.,* 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). The defendant maintains the plaintiff is neither able to establish a connection between its conduct and the resulting damage nor show that the injury was foreseeable, particularly in view of the teenagers' intervening action.

■ Foreseeability of injury and harm that could be caused by one's breach of duty of care has been found to be "a requisite of proximate cause." *Bolkhir,* at 710, 365 S.E.2d at 901. To prove foreseeability, the plaintiff need not establish that the defendant anticipated the particular injury that resulted, but that it had a reasonable expectation that its actions, or any omission on its part to act, could cause some injury to other persons or property. *Hall v. Coble Dairies,* 234 N.C. 206, 67 S.E.2d 63 (1951). "The intervening conduct must be of such nature and kind that the original wrongdoer had *no* reasonable ground to anticipate it." *Moore v. Carolina Power and Carolina Light Co.,*

537 F.2d 1252, 1255 (4th Cir.1976), *quoting Riddle v. Artis,* 243 N.C. 668, 671, 91 S.E.2d 894, 896 (1956) (emphasis added).

### 1. *It is Foreseeable that the Fusees Could Cause Damage.*

■ The evidence presented by the parties demonstrates that it was foreseeable to the plaintiff that injury to a person or to one's property could result from improper use of the fusees. The defendant's employees admitted that the fusee, if it made contact with property, could produce a fire. The Material Safety Data Sheet that accompanied the fusees warned that the product was extremely flammable and should be kept out of the reach of children. Each individual fusee contained CSX's logo as well as a warning label that stated "Extremely Flammable, Keep Out of Reach of Children." Furthermore, evidence elicited from one witness described the fusee as more dangerous than an ordinary flame or match as it is hotter, it is bigger, and it drips as it burns.

The employees of CSX admitted that they had a company policy which required specific storage procedures for hazardous materials, including fusees. In particular, when not in use, the fusees were to be placed in the company storage building in specific metal containers. The CSX safety manual dictates that the fusees are not to be contained in a location where they can "be obtained by unauthorized persons." Pl. Motion for Summary Judgment, Exhibit 6. Thus, the defendant had knowledge that if used in an erroneous manner, the fusees could generate extensive damage to a person or property.

### 2. *A Reasonable Jury Could Find It Foreseeable that a Stranger May Confiscate the Fusees and Cause Damage.*

Relying heavily on *Williams v. Mickens,* 247 N.C. 262, 100 S.E.2d 511 (1957), the defendant contends that it may not be held liable for the damages caused by a third party's criminal conduct. The defendant maintains that it was not foreseeable that a teenager would trespass onto their property, steal the fusees, and use them for an illegal purpose. Thus, the defendant argues that even if the court finds the defendant negligent in its storage of the flares, this negligence is not the proximate cause of the damage to the plaintiff. Rather, the teenagers' actions was an intervening cause that cuts off the defendant's liability.

■ "[A]n independent, intervening cause ... breaks the chain of causation from the original negligent act or omission [and] may relieve the wrongdoer of liability." *Hall v. Coble Dairies,* 234 N.C. 206, 211, 67 S.E.2d 63, 67 (1951). In essence, the intervening cause shatters the *connection* between the original negligence and the damage, with the intervening cause becoming the *new* proximate cause. *Id.* at 211–212, 67 S.E.2d at 67; *see Rawl v. U.S.,* 778 F.2d 1009, 1015 (4th Cir.1985) ("intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged").

■ Generally, the question of causation in a negligence action is a question of fact which is best resolved by the jury's determination. *Wyatt v. Gilmore,* 57 N.C.App. 57, 290 S.E.2d 790 (1982). As the intervening cause is naturally associated with proximate cause, it, too, should be submitted to the jury. *See Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584 (1983).

This is particularly true in this action as the court finds that "reasonable men [could] ... differ on the issues of negligence and proximate cause." *Wyatt,* 57 N.C.App. at 58, 290 S.E.2d at 791. Generally, North Carolina finds that the *unforeseeable* criminal actions of a third party limit the liability of the original negligent defendant. *Williams v. Mickens,* 247 N.C. 262, 100 S.E.2d 511 (1957). In the instant action, the criminal actions were foreseeable.

Employees of the defendant state that prior to the accident on August 17, 1992, they had noticed individuals, including children, walking across the property *at least once a week.* A children's playground was situated along the CSX property line. A well-worn path, close to where the minor allegedly located the fusees, has been created by individuals crossing CSX property. There is evidence that the defendant never attempted to stop the children from crossing its property.

The defendant had knowledge of at least 69 instances of vandalism on or near their property by neighborhood juveniles. Despite the thefts and other acts of violence on or near its property, the defendant allegedly placed hazardous materials within the reach of juveniles.[2] Accordingly, a reasonable jury may find the actions of the third parties to be *foreseeable*. *See Arnett v. Yeago*, 247 N.C. 356, 100 S.E.2d 855 (1957) and *Campbell v. Laundry*, 190 N.C. 649, 130 S.E. 638 (1925) (Each case involved an action of a third party which was foreseeable by the defendant.).

### C. Gross Negligence, Recklessness, Willful and Wanton Conduct

 The defendant contends that as it is entitled to summary judgment on the issue of negligence, so should it be granted summary judgment on the remaining allegation of gross negligence, recklessness, and willful and wanton conduct. North Carolina has found that punitive damages may only be awarded when the negligence of the defendant is shown to be gross negligence or of a willful and wanton conduct. *Cowan v. Brian Center Management*, 109 N.C.App. 443, 428 S.E.2d 263 (1993). If the plaintiffs have failed to plead with particularity the aggravated circumstances giving rise to punitive damages, the court may dismiss the punitive damage request. *See Henry v. Deen*, 61 N.C.App. 189, 300 S.E.2d 707 (1983); *rev. on other grounds*, 310 N.C. 75, 310 S.E.2d 326 (1984). In this action, the plaintiff has not maintained an action for punitive damages. However, a jury may be able to determine that the defendant's actions were committed in "the absence of even slight care" or to a greater degree of disdain, entitling the plaintiff to a finding of gross negligence or willful and wanton conduct. *Beck v. Carolina Power and Light*, 57 N.C.App. 373, 383, 291 S.E.2d 897, 903 (1982).

The defendant's employee which inspects and secures the property was not present at the facility on a daily basis. The defendant did not attempt to completely fence the yard from public use nor did it place signs warning people that the property was private. The defendant did not inform those who crossed the property that they were not allowed to do so. The defendant violated its own company policy by permitting flares to be stored haphazardly in the rail yard. Though the court is inclined to find that the conduct of the defendant was not so egregious to entitle an action for gross negligence or willful and wanton conduct, a reasonable jury may be capable of finding that the evidence supports such a finding.

### *Conclusion*

Accordingly, the court hereby DENIES the defendant's motion for summary judgment. This entire action remains before this court for disposition by trial or otherwise.

---

**2.** The court notes that an investigation of the CSX property *almost one full year after the accident* located flares on the ground around the same site the teenager describes he found the ones he used on August 17. Each individual flare had the CSX logo on it as well as a warning that the product should be kept out of the reach of children.