ESSIE HIGDON WARD, Administratrix of the Estate of NORVIN G. WARD, v. SOUTHERN RAILWAY COMPANY.

(Filed 23 May, 1934.)

**1. Master and Servant E b—Contention that engineer could have prevented injury to brakeman after discovery of peril held not supported by evidence.**

Where an engineer testifies that he could not have done anything to avoid the injury to the brakeman on his freight train after the discovery of the brakeman's peril from trespassers on the train, and there is no evidence to the contrary, the railroad company may not be held liable for the injury on the contention that the engineer should have jolted the cars, stopped the train, or blowed the whistle upon the discovery of the trespassers.

**2. Same—Held: no injury to employees could have been anticipated from employer's alleged negligent custom and nonsuit was proper.**

The evidence in this case was to the effect that plaintiff's intestate was a brakeman on defendant's railroad and that he was killed when struck by a piece of coal thrown from one of the cars by trespassers as he was inspecting the train in the line of his duty when the train was slowed down at a switch. There was evidence that thieves had habitually stolen coal from defendant's cars in this manner for a number of years, and plaintiff contended that defendant's negligence in permitting this larcenous custom was the proximate cause of intestate's death. There was no evidence that any employee had theretofore been injured by coal thrown from the cars in such manner: *Held*, no injury to employees could have been anticipated by defendant from such recurring acts of larceny by trespassers, and even conceding that defendant was negligent in failing to stop such custom, it cannot be held liable in damages to plaintiff, the rule of law applicable being that where unlawful acts of third persons intervene between defendant's negligence and the injury which was not intended by defendant and could not have been foreseen by it, the causal relation is broken and defendant is not liable.

Civil action, before *McElroy, J.,* at October Term, 1933, of Buncombe.

The evidence tended to show that Norvin G. Ward, plaintiff's intestate, was fatally injured about twelve o'clock noon, at Hendersonville, on or about 9 February, 1933. Ward was head brakeman on a freight train of defendant, and it was admitted that he was killed while engaged in interstate commerce. The story of his death, as told by the engineer, is substantially as follows: "Approaching Hendersonville, about one-half mile from the station, we left the main line and headed into the passing track. Mr. Ward threw the switch. He was riding on the engine all the way from Asheville. I moved along so he could get off and throw the switch without stopping. . . . He got off on the right-hand side, the side occupied by me as engineer. He then walked back just a little

way, stopped and was looking under the cars as I pulled by inspecting the train. . . . It was the duty of the brakeman to inspect the train at all times. . . . He was about four cars back from the engine and there was a big coal car loaded with large lumps of coal, loaded up high, and just about the time the coal car came up where Mr. Ward was there were three colored men came up from the opposite side and went to throwing coal off and about the third piece they threw off hit Mr. Ward. I didn't see the colored men climb up or until they came up on the top of the car. I first saw them on the car. They got up on the opposite side of the car from where Ward was standing. . . . When the coal hit Mr. Ward he fell just as quick as that coal hit him, right on the ground. I turned the engine over to the fireman, told him to pull in the clear, that a colored man had killed the brakeman. All three of the men on the car were throwing off coal, on the same side. . . . It looked like his skull was crushed." In response to question as to how long trespassers had been throwing coal off the train, the witness said: "They have been doing it ever since I have been on the railroad, that is about thirty-two years. . . . Throwing it off every time it would go slow enough for them to get upon it." In response to the question to the engineer as to whether he could have stopped the train or "jostled the cars" so as to prevent colored men from throwing coal from the train, he said: "It could not have been done. . . . I could not have helped it—had very little time. I didn't have time. The darkies had been stealing coal here. I had known it for thirty-two years. I never knew of anybody being hurt before that. Mr. Ward had been running on this line part of the time and he had been with the railroad a great while. He had been over on this line a good deal. I have had him as conductor over here. . . . Everybody knew that the darkies were stealing coal from the train." There was further evidence that the conductor was in the caboose at the time on the rear of the train, where his duty required him to be.

There was further evidence that the defendant company had done nothing to prevent thieves from boarding freight trains, when they were running slowly or standing still, and stealing coal therefrom during the last three or four years. There was also evidence that coal was frequently stolen over the entire system, and that at other points on the system special agents had been employed by the defendant in an attempt to apprehend the thieves.

At the conclusion of the evidence the trial judge sustained a motion of nonsuit and the plaintiff appealed.

*Thomas L. Johnson, J. Bat Smathers and T. A. Uzzell, Jr., for plaintiff.*

*R. C. Kelly and Jones & Ward for defendant.*

BROGDEN, J. Is a railroad company liable in damages for the killing of an employee by trespassers and thieves who come upon a freight train to steal coal therefrom?

The plaintiff plants the right of recovery upon two grounds: First, that the engineer of the train did not blow the whistle, stop the train or jostle the cars and thus prevent the thieves from climbing upon the train; second, that thieves had been stealing coal from the defendant and climbing upon its freight trains for such purposes for thirty years, and that the defendant had failed and neglected to take proper precaution to prevent the stealing of coal. The engineer testified that he did not have time to do anything to save plaintiff's intestate after the Negroes crawled upon the train and began to throw coal therefrom. There was no evidence to the contrary, and consequently this ground of liability disappears.

The basis for the second contention is that the defendant had negligently permitted and allowed thieves to steal its property, and that such negligent custom was the proximate cause of the death of plaintiff's intestate.

It is a familiar principle of law that if an employer permits a dangerous custom to exist in the operation of his business and acquiesces therein that he must answer in damages for all foreseeable consequences resulting therefrom. However, it would not ordinarily be supposed that a carrier would approve or acquiesce in the larceny of its property by thieves, and there is no evidence that the defendant invited or approved the various thefts. Moreover, there was no evidence that any other employee of the defendant had ever been injured by the acts of coal thieves, and consequently if such acts were dangerous, there was no notice of the previous hazard of personal injury to trainmen.

In the final analysis, the case presents an injury inflicted by the criminal act of a third person, and one in nowise connected with the operation of the train or the ordinary prosecution of the defendant's business.

Assuming, but not deciding, that the defendant was negligent in not taking proper precaution against the coal thieves, nevertheless the general rule of law is that if between the negligence and the injury there is the intervening crime or wilful and malicious act of a third person producing the injury but that such was not intended by the defendant, and could not have been reasonably foreseen by it, "the causal chain between the original negligence and accident is broken." *Burt v. Advertising Co.,* 28 N. E., 1; *Chancey v. R. R.,* 174 N. C., 351; *Green v. Atlanta & C. A. L. Ry. Co.,* 148 S. E., 633; *Green v. R. R.,* 279 U. S., 821, 73 L. Ed., 976; *Davis v. Green,* 260 U. S., 349; *St. Louis R. R. Co. v. Mills,* 271 U. S., 343, 70 L. Ed., 979; *Strong v. Granite Furniture Co.,* 294 Pac., 303, 78 A. L. R., 465, and annotation.

The plaintiff relies upon *Fletcher v. R. R.,* 168 U. S., 134, 42 L. Ed., 411. It is to be observed, however, that the *Fletcher case* involved injury inflicted by the railroad company by reason of negligent operation of a train which was entirely under its control. Consequently this case is not determinative.

Affirmed.