### ROY ROSS v. ATLANTIC GREYHOUND CORPORATION.

(Filed 2 June, 1943.)

**1. Trial § 22a—**

> On a motion to nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable inference to be drawn therefrom. C. S., 567.

**2. Automobiles §§ 18d, 18g: Negligence § 19b—**

> In an action to recover damages for personal injuries to plaintiff, a passenger on defendant's bus, where the evidence tended to show that the driver stopped his crowded bus at night on the left-hand side of the highway, in front of a filling station which was used as a bus stop, and requested plaintiff, who was near the door, to alight so that another passenger could get off, which plaintiff did, stepping into the highway where he was struck and injured by another automobile coming from the opposite direction, driven by one intoxicated, a motion for judgment as of nonsuit was properly denied.

**3. Automobiles § 18h: Negligence § 20—**

> Where a passenger on a public bus alights, on the highway, at the request of the bus driver, so that another passenger could get out, and is injured by an automobile, coming from the opposite direction and driven by one who is intoxicated, it is reversible error for the court, in its charge to the jury, to compare these facts to a case where a horse is left unhitched in the street, and is frightened by a stranger and runs away, causing damage—the facts in the illustration are not similar to the facts of this case.

APPEAL by defendant from *Warlick, J.*, at September Term, 1942, of RICHMOND.

This is a civil action to recover for injuries alleged to have been received when the plaintiff was hit by an automobile driven by Clyde

Kirby, and seriously injured. The injury occurred while plaintiff was standing near the defendant's bus at Grover, N. C., where he had left the bus to let passengers alight therefrom.

The plaintiff, on the morning of 21 December, 1940, accompanied by his wife, purchased bus tickets from Rockingham, N. C., to Blacksburg, S. C. It was necessary to change busses in Charlotte, where they boarded one of defendant's busses for Blacksburg, S. C. The bus was crowded and plaintiff and his wife stood up in the aisle near the front of the bus.

The plaintiff testified that between Charlotte and Grover the bus stopped three or four times and the bus driver requested plaintiff and his wife to get off two or three times, in order to let passengers out of the bus. When the bus arrived at Grover, N. C., it was 7:30 or 8:00 o'clock p.m., and was dark. The bus was pulled over to the left-hand side of the highway on the grounds of a filling station, the regular stopping place in Grover. The plaintiff further testified: "When we stopped the driver threw the door open and asked me to step off and let the lady off as there was a lady in the back of the bus that had to travel through all the whole aisle, too, and we had to come out and let her off. As that lady and the people started coming out they just crowded me and I began to back out there to the side of the bus, out the door, and that is about the only thing I know until about three weeks later, when I was in the hospital. . . . The lights were on the bus as we stopped and when I stepped outside where it was dark I was just like I was blind for a few minutes after I stepped out there. The door is on the right side of the bus. We were parked on the left-hand side of the road. I will say the door was 3½ feet, I imagine, probably 4 feet wide. It opened to the front. I had taken about two and a half steps out from the steps of the bus there. These people in the aisle kept on coming out. Well, as they were coming out there, a bunch of ladies, about a couple of people were between my wife and I, and so I just kept backing up to keep them from stepping on my toes. There was a bunch of ladies there and the next thing I knew I was hit by an automobile and three weeks later I remembered it. The bus driver didn't give any warning about any road being there, or anything. I didn't have a bit of business getting off there. I was not familiar with the surroundings there that night where I was put off. I did not have any intention of getting off there. I could not see whether the bus stopped near the highway or some distance from the highway, or what."

Plaintiff's wife, Mrs. Roberta Ross, testified: "We were standing there talking, my husband and I, and the bus stopped and I did not even know where it stopped until he opened the door and asked us to please step off so a lady could get off. He stepped off before I did and

in some way, like people do when they get off the bus, they kinder get crowded and mixed up when more than two get off, and he was two or three steps in front of me. People standing in the aisle had to get out so the lady in the back of the bus could get by. There was a crowd out there beside the bus. I didn't get as far away from the bus when I got out as my husband did. When we were standing in the bus I couldn't see out and the driver gave no warning of any road or anything of that sort. Well, I saw some lights coming before it struck Mr. Ross and I screamed and I don't remember nothing else."

Clyde Kirby testified for plaintiff as follows: "I could not say how close the bus was to the highway. After I stopped I didn't notice and I couldn't see anything. I thought it was waiting on traffic. The bus was sitting there with its lights on. By 'waiting on traffic' I mean so it could come out in the highway." On cross-examination, this witness testified: "Yes, sir, the patrolman arrested me for driving intoxicated, and I was convicted of driving in an intoxicated condition at that time."

Plaintiff offered in evidence the deposition of Grace Belk, in which she testified as follows: "I happened to be in Grover, N. C., on 21 December, 1940, when Mr. Ross was injured. Ivy Allman and I went down in a car. Yes, the bus passed me just before we reached the filling station at Grover. Our car and the bus were both going south. After the bus passed it stopped at the first filling station on the left. We stopped. The bus was just a little bit in front of us and we stopped just behind it. Yes, we were close enough to the bus to see it stop. The bus stopped just right on the left side of the road. We stopped right behind the bus. We were over further than it was. The bus was right against the curb. Ivy Allman is in the Army. He has been in the Army two months and is at Camp Wolters in Texas at present. I did not see anyone but two boys get out before they got hit. They just stepped out and the car hit them. Yes, they were the boys that were hit by Clyde Kirby. Yes, I knew Clyde Kirby. Yes, Clyde Kirby was the only one who was in the car that hit the boys. They had just stepped out when they got hit and were right close to the bus. When they were struck they were in the highway. Yes, the car that Clyde Kirby was driving was in the highway when it hit the boys. After it struck the boys it went up the road a little piece and stopped. Yes, Clyde Kirby pulled the car over and stopped. The Ross boy was lying about two steps from our car after he was struck. He was about two steps from our car. Yes, he was lying in the highway after he was struck; he was lying about two steps from our car over in the highway."

The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of plaintiff. From judgment thereon, the defendant appeals, assigning error.

*Clyde R. Hoey and Jones & Jones for plaintiff.*

*Fred S. Hutchins, H. Bryce Parker, and Fred W. Bynum for defendant.*

Denny, J. The defendant assigns as error the refusal of his Honor to grant its motion for judgment as of nonsuit lodged at the close of plaintiff's evidence and renewed at the close of all the evidence.

On a motion to nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable inference to be drawn therefrom. C. S. 567. *Wingler v. Miller, ante,* 15; *Edwards v. Junior Order,* 220 N. C., 41, 16 S. E. (2d), 466; *Coltrain v. R. R.,* 216 N. C., 263, 4 S. E. (2d), 852; *Lincoln v. R. R.,* 207 N. C., 787, 178 S. E. (2d), 601; *Dickerson v. Reynolds,* 205 N. C., 770, 172 S. E., 402; *Cromwell v. Logan,* 196 N. C., 588, 146 S. E., 233; *Brown v. R. R.,* 195 N. C., 699, 143 S. E., 536; *Robinson v. Ivey,* 193 N. C., 805, 138 S. E., 173. However, the defendant seriously contends that under the law, as laid down in *White v. Chappell,* 219 N. C., 652, 14 S. E. (2d), 843, the responsibility of the defendant extended only to "a safe landing" or "a landing in safety," and since there is evidence to the effect that plaintiff's injury occurred from two to ten minutes after the bus stopped and the plaintiff alighted therefrom, that defendant had discharged its duty to plaintiff, and is entitled to judgment as of nonsuit. The law applicable to the facts in *White v. Chappell, supra,* does not apply to the facts in the instant case. There the relationship of carrier and passenger had terminated prior to the time of the injury, here that relationship had not terminated but still existed at the time of plaintiff's injury. When the plaintiff's evidence on this record is considered in a light most favorable to him, we think it is sufficient to be submitted to the jury, and that his Honor was correct in overruling defendant's motion for judgment as of nonsuit. It will be noted that one of plaintiff's witnesses testified: "The bus stopped just right on the left side of the road. . . . The bus was right against the curb. . . . They just stepped out and the car hit them. Yes, they were the boys that were hit by Clyde Kirby. . . . They had just stepped out when they got hit and were right close to the bus. When they were struck they were in the highway."

The defendant also excepted to, and assigned as error, that portion of his Honor's charge as follows: "Thus, where a horse is left unhitched in the street and unattended, and is maliciously frightened by a stranger and runs away, but for the intervening act would not have run away and injury would not have occurred, yet it was the negligence of the driver in the first instance which made the runaway possible, that is, leaving the horse unattended and untied. Now, this negligence has not

been superseded or obliterated and the driver is responsible for the resulting injuries, if such should be found by the greater weight of the evidence." The defendant contends this is an instruction of law on facts not applicable to this case. We think the exception well taken, although the language to which the exception is addressed is a quotation from the case of *Balcum v. Johnson,* 177 N. C., 213, 98 S. E., 532; *S. v. McFalls,* 221 N. C., 22, 18 S. E. (2d), 700; *Light Co. v. Moss,* 220 N. C., 200, 17 S. E. (2d), 10. The facts used in the illustration are not similar to the facts in this case. The horse is animate and has the power to move of its own volition without the interference or wrongful act of anyone. A motor vehicle is inanimate and cannot move of its own volition. Furthermore, the plaintiff's injury did not result from the movement of defendant's bus, either maliciously or otherwise. Moreover, where a motor vehicle is parked properly, the brakes set and the engine turned off, the owner thereof is not responsible for the independent act of a third party in negligently or maliciously starting the motor vehicle which results in damages or injuries to another. *Maloney v. Kaplan,* 233 N. Y., 426, 135 N. E., 838, 26 A. L. R., 909; *In re Rhad v. Duquesne Light Co.,* 255 Pa., 409, L. R. A., 1917D, 864, 100 Atl., 262. See Annotations 26 A. L. R., 912, for numerous authorities in support of the above view. And in our own jurisdiction, in the case of *Ward v. R. R.,* 206 N. C., 530, 174 S. E., 443, *Brogden, J.,* speaking for the Court, said: "Assuming, but not deciding, that the defendant was negligent in not taking proper precaution . . . , nevertheless the general rule of law is that if between the negligence and the injury there is the intervening crime or wilful and malicious act of a third person producing the injury but that such was not intended by the defendant, and could not have been reasonably foreseen by it 'the causal chain between the original negligence and the accident is broken.' *Burt v. Advertising Co.,* 28 N. E., 1; *Chancey v. R. R.,* 174 N. C., 351; *Green v. Atlanta & C. A. L. Ry. Co.,* 148 S. E., 633; *Green v. R. R.,* 279 U. S., 821, 73 L. Ed., 976; *Davis v. Green,* 260 U. S., 349; *St. Louis R. R. Co. v. Mills,* 271 U. S., 343, 70 L. Ed., 979; *Strong v. Granite Furniture Co.,* 294 Pac., 303, 78 A. L. R., 465, and annotations." *Penny v. R. R. Co.,* 153 N. C., 296, 69 S. E., 238.

The question here is whether or not the plaintiff was injured by the negligence of the defendant or by the negligence of the defendant concurring with the negligence of Clyde Kirby, the driver of the automobile which actually struck the plaintiff—the plaintiff being free from contributory negligence. The jury, in the light of all the circumstances, must determine whether or not the defendant exercised that degree of care commensurate with its duty under its relationship to the plaintiff as carrier and passenger which existed at the time. *Horton v. Coach*

Co., 216 N. C., 567, 5 S. E. (2d), 828; Perry v. Sykes, 215 N. C., 39, 200 S. E., 923; Hollingsworth v. Skelding, 142 N. C., 246, 55 S. E., 212; Clark v. Traction Co., 138 N. C., 77, 50 S. E., 518; Lewis v. Pacific Greyhound Lines, Inc., 96 A. L. R., 718, 147 Ore., 588, 34 P. (2d), 616. If it did not so exercise that degree of care, then the jury likewise must determine whether or not the defendant is relieved of liability by the intervening negligence of Clyde Kirby, or by the contributory negligence of the plaintiff. These questions must be answered by the jury, in the light of all the evidence and the attending circumstances. The law relative to negligence, intervening negligence and contributory negligence, is too well settled to require a discussion thereof here. 22 R. C. L., Sec. 20, p. 136; Milwaukee R. R. Co. v. Kellogg, 94 U. S., 474, 24 U. S. (Law Ed.), 258; Montgomery v. Blades, 222 N. C., 463, 23 S. E. (2d), 844; Haney v. Lincolnton, 207 N. C., 282, 176 S. E., 573; Baker v. R. R., 205 N. C., 329, 171 S. E., 342; Hinnant v. R. R., 202 N. C., 489, 163 S. E., 555; Herman v. R. R., 197 N. C., 718, 150 S. E., 36; Harton v. Tel. Co., 141 N. C., 455, 54 S. E., 299.

The other assignments of error need not be discussed, since the questions presented may not arise on a new trial. We think the defendant, for the reasons given, is entitled to a new trial, and it is so ordered.

New trial.